FILED
2019 Nov-04 AM 11:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DARRYL REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 5:18-cv-1354-LCB |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the complaint (doc. 1) of plaintiff Darryl Reed. In his complaint, plaintiff seeks judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Court has reviewed the pertinent record and the parties' briefs.

It is the duty of the Court to review the decision of the ALJ and not re-weigh the evidence or substitute its decision for the ALJ's. In particular, the Court must affirm the ALJ's decision if it is supported by substantial evidence, even if there is evidence that supports the opposite conclusion. The Court must also determine whether the ALJ applied the correct legal standards.

1

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on April 3, 2017, alleging disability beginning on December 6, 2016. The administrative law judge ("ALJ") held a hearing on January 10, 2018, and issued an unfavorable decision on March 21, 2018.

Plaintiff contends that the ALJ failed to properly evaluate the credibility of his complaints of pain consistent with the Eleventh Circuit standard. More specifically, plaintiff argues that the ALJ's credibility determination was not supported by substantial evidence. Effective March 28, 2016, Social Security Ruling ("SSR") 96-7p was superseded by SSR 16-3p to clarify the process by which an assessment of the credibility of claims of pain is made. SSR 16-3p sets forth a two-step process. First, the ALJ must determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, Evaluations of Symptoms in Disability Claims, 2016 WL 1119029, at *3. Second, once the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms is established, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms. *Id*. at *4. As plaintiff points out, SSR 16-3p states that "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" *Id*. at *9.

However, this is not what the ALJ did in this case. To be sure, the ALJ did conclude that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence of record. (R. 18). But the ALJ then went on to describe, in great detail, plaintiff's medically determinable impairments and why plaintiff's alleged symptoms (and onset date) were not entirely consistent with the record evidence. (*Id*. at 18-22).

Specifically, the ALJ noted that plaintiff has diabetes mellitus, but that he did not always take his medication as directed. (*Id*. at 49-50, 1041, 1989). The ALJ also recognized that plaintiff has neuropathy related to his diabetes; however, he had continued working through December 2016 with the neuropathy. Additionally, an examination on June 2017 revealed that, while plaintiff had some decreased sensation in his left arm, grip strength, range of motion, and dexterity were normal in both hands with no muscle atrophy. (*Id*. at 1890-96). This examination was largely consistent with June 2016 medical records indicating almost all normal grip strength, normal sensation findings, and no muscle atrophy. (*Id*. at 863-65; *see also id*. at 1892).

The ALJ also noted that a July 2016 MRI indicated disc bulging and mild facet hypertrophy at L2-L3; posterior disc protraction resulting in moderate spinal

3

canal narrowing with compression of the nerve roots in the lateral recess at the L3-L4 level; posterior disc herniation and facet hypertrophy at L4-L5 with moderate narrowing of the spinal canal and foramina with compression of the L5 nerve roots; and posterior disc herniation and facet hypertrophy with mild bilateral neuroforaminal narrowing at L5-S1. (*Id*. at 466-67). Overall, it was noted that these findings indicated stable degenerative changes at L3-L4 and L4-L5 resulting in narrowing and compression of the transiting nerve roots in the lateral recesses. (*Id*. at 467). An MRI of the cervical spine taken the same day showed stable mild central disc protrusion at C3-C4 with no significant cord compression. (*Id*. at 461). However, plaintiff's physical examinations revealed normal gait, normal motor strength, and normal range of motion. (*Id*. at 20, 418, 606, 612, 1148, 1365-66). Furthermore, although plaintiff presented with a cane at times, overall examinations revealed that he walked with a normal non-antalgic gate, and plaintiff has not pointed to any record where a cane was mandated or prescribed by a physician. (*Id*. at 95, 606, 673, 749, 1148, 1278, 1396, 1429, 1440, 1522, 1548, 1764); *Brenneman v. Berryhill*, No. CV 116-043, 2017 WL 1739176, at *3 (S.D. Ga. Apr. 12, 2017), *report and recommendation adopted*, No. CV 116-043, 2017 WL 1745059 (S.D. Ga. May 3, 2017) (noting that there must be medical documentation establishing the need for a hand-held assistive device such as a cane and describing the circumstances

for which it is needed, and that a claimant must show more than generalized evidence of a condition that might require a cane).

The ALJ also noted several records undermined plaintiff's testimony. For example, in August 2012, plaintiff reported that he could walk for up to one-and-a-half miles, which conflicts with his 2018 hearing testimony that he could only stand for five minutes. (*Id.* at 985, 1648). Additionally, the ALJ found that the record showed no worsening of plaintiff's impairments in relation to his alleged onset date in December 2016; rather, the ALJ noted that plaintiff was let go from his job as a security guard at that time. Thus, the Court finds that there is substantial evidence to support the ALJ's conclusion that, while the objective medical evidence demonstrated degenerative changes over time, plaintiff had these impairments before his onset date, and there is no evidence that he stopped working due to them.

Finally, plaintiff argues that the ALJ references only isolated portions of the June 2017 consultative examination by Dr. Mollohan. (*Id.* at 20, 1889-96). The main thrust of plaintiff's argument appears to be that the ALJ did not credit plaintiff's statements to Dr. Mollohan that his neck and back pain were aggravated by sitting or walking more than fifteen minutes and were alleviated by massage, traction machine, and a cane; Dr. Mollohan also noted that plaintiff reported experiencing pain while walking 120 feet. The Court finds that the ALJ did not cherry pick from Dr. Mollohan's records. The fact that Dr. Mollohan concluded that

plaintiff's clinical exam findings were consistent with his complaints are not inconsistent with the ALJ's determination. The ALJ noted that Dr. Mollohan's examination revealed tenderness in the cervical, thoracic, and lumbar spine; limited range of motion in cervical spine; and slight limitation of motion in the lumbar spine. However, as the ALJ noted, Dr. Mollohan also indicated that plaintiff walked with a non-antalgic gait; could sit, get up, and get on and off the examination table without difficulty; and was able to sit and stand for thirty minutes without difficulty. In short, the ALJ did not err in his assessment of Dr. Mollohan's examination. The ALJ weighed the evidence as he was required to do.

In sum, the Court finds that the ALJ did not simply pick and choose a few medical records to support his conclusion. Rather, the ALJ addressed the medical record as a whole and articulated his reasons for not fully crediting plaintiff's subjective complaints of pain. *See, e.g.*, *Monge v. Berryhill*, No. 17-22005-CIV, 2018 WL 4776085, at *2 (S.D. Fla. Aug. 10, 2018) ("Judge Goodman found the ALJ did not ignore evidence or pick and choose between records, but addressed the medical evidence as a whole, including the evidence supplied by Plaintiff."). Thus, the Court finds that the ALJ's evaluation of plaintiff's credibility with respect to his complaints of pain and alleged onset date was supported by substantial evidence.

Accordingly,

IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

**DONE** and **ORDERED** this November 4, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE